In re INTERNATIONAL HORIZONS, INC., Debtor.

In re INTERNATIONAL HORIZONS (CURACAO), N.V., Debtor.

In re NORTH AMERICAN EXPORTS, INC., Debtor.

In re INTERNATIONAL HORIZONS, N.V., Debtor.

Bankruptcy Nos. 81–01231A, 81–01232A, 81–01233A, and 81–01234A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

March 21, 1981.

David G. Bisbee, Bisbee & Parker, Robert A. Parker, Jr., Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for debtors.

Jeffrey M. Smith, Trotter, Bondurant, Miller & Hishon, Atlanta, Ga., for Touche Ross & Co.

Jeffrey L. Raney, Robert W. Patrick, Jr., Jesse H. Austin, Karen Wildau, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Bank of America.

Dennis S. Meir, Kilpatrick & Cody, Atlanta, Ga., for Creditors' Committee.

George Anthony Smith, Smith, Currie & Hancock, Atlanta, Ga., for C & S Builders.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On March 31, 1981, the Court entered an Order authorizing the debtors to employ Troutman, Sanders, Lockerman & Ashmore (hereinafter "TSL&A") and Bisbee & Parker (hereinafter "B&P") to act under a

general retainer as attorneys for the debtors in possession. On April 2, 1981, the Court entered an Order authorizing the debtors to retain Touche Ross & Co. (hereinafter "TR&Co.") under a general retainer to act as accountants for the debtors in possession.

On April 9, 1981, the debtors filed an application for authority to pay a retainer to the debtors' accountants and filed an amendment to the debtors' previously filed application for authority to pay a retainer to attorneys for the debtors. On April 13, 1981, the debtors filed a memorandum in support of the application for interim compensation and certain professional fees by attorneys and accountants of the debtors with affidavits attached. On April 13, 1981, the Bank of America, N.T. & S.A. (hereinafter "BOA") filed a brief in opposition to the debtors' application to pay retainer to either the debtors' attorneys or the debtors' accountants.

On April 14, 1981, the debtors' attorneys filed a supplemental brief in support of the application to pay retainers with an affidavit attached. On April 20, 1981, B&P filed an application for award of interim compensation. On April 21, 1981, a notice of hearing on application for interim compensation and retainers for B&P, TSL&A, and TR&Co. was mailed to creditors by the Clerk of the Court. That notice stated that any request for a hearing on these applications must be filed with the Court not later than April 29, 1981. Also filed on April 21, 1981 was an application for award of interim compensation and retainer by TSL&A.

On April 24, 1981, BOA requested a hearing on the applications for interim compensation and retainers. On April 27, 1981, the committee of unsecured creditors requested a hearing on the applications for interim compensation filed by the attorneys for the debtors. On April 29, 1981, an objection to the applications for interim compensation and retainers and a request for a hearing was filed in the Court by the law firm of Smith, Currie & Hancock as attorneys for a creditor. On May 11, 1981, a hearing on these applications was held before the Court and the matter taken under advisement.

At that hearing TSL&A and B&P filed and submitted a second memorandum in support of application for award of interim compensation. Since that hearing, TSL&A and B&P have filed an application to use certain cash collateral to pay administrative expenses including any award of interim compensation. That application, *inter alia*, was heard on May 18, 1981 and a ruling on that application will be forthcoming.

B&P has asked for $21,264.00 in attorneys' fees and $1,873.13 pre-petition expenses advanced and has requested allowance of $30,986.50 for post-petition attorneys' fees and $1,748.55 for post-petition costs for the period prior to April 14, 1981. B&P also filed an amendment showing costs and fees accrued between April 14 and April 30, 1981. The application shows 277.6 hours of attorneys' work for a resulting fee of $17,964.00 and actual expenses of $2,836.77. B&P has received a post-petition payment of $11,589.00 for fees and $195.50 for costs. The resulting net fees which B&P claims that are due are in the amount of $58,625.50 with resulting net costs in the amount of $6,262.95.

TSL&A has applied for $42,726.50 pre-petition fees and $44.51 pre-petition costs as well as $33,159.00 post-petition fees and $3,299.35 post-petition costs.

TR&Co. has requested that a monthly retainer in the amount of $17,500.00 be paid to it against costs and fees incurred.

The applications of the attorneys, TSL&A and B&P, are for specific amounts of attorneys' fees incurred at specific hourly rates by the attorneys who performed the services in question.

The Creditors' Committee has objected to the payment of any retainers on the grounds that both attorneys and accountants should be paid only for services actually rendered. The Creditors' Committee has also objected to payment for pre-petition services and to the reasonableness of the hourly rates charged by certain of the attorneys.

■ The Court finds that the retainer arrangement is inappropriate because it would require the debtors to pay for services which had not yet been rendered. The Court also notes that under a retainer arrangement there may be a tendency for the amount of services required to grow in order to consume the amount of funds available. Therefore, the Court denies the applications of TSL&A, B&P, and TR&Co. for retainers.

The Court declines at this point to rule on the issue of whether or not some or all of the pre-petition services in question are compensable as an administrative expense. Nor is the Court inclined, at this time, to determine or approve hourly rates of compensation for the attorneys involved in the pre-petition services.

■ However, the Court does not wish to require that the attorneys for the debtors in possession fund this reorganization proceeding. In order to avoid this result, the Court finds that it should award the attorneys for the debtors in possession reasonable interim compensation for their services. Therefore, the Court makes an interim allowance of fees to TSL&A, subject to subsequent revisions, either increases or decreases in the amount awarded as the Court may deem appropriate, in the amount of $30,000.00 and costs in the amount of $3,343.86. The Court further makes an interim allowance of compensation to B&P, subject to subsequent revisions as the Court may deem appropriate, in the amount of $34,000.00 and costs in the amount of $6,262.95.

In overruling, in part, the objections filed by the various parties in interest, the Court has reviewed the law applicable to the allowance of interim compensation as an administrative expense. As one commentator has stated:

"Complaints about unnecessarily high expenditures attendant upon liquidation [and reorganization] proceedings are common in the history of American bankruptcy law. There is practically no period in the development of the institution at which such complaints were not expressed, resulting often in the enactment of provisions intended to increase and strengthen judicial control over expenses of administration." 3A *Collier on Bankruptcy* ¶ 62.02[1], p. 1390–91 (14th ed. 1975).

Under the Bankruptcy Reform Act of 1978, limitations on expenses of administration, at least as these expenses pertain to the compensation of professional persons, are set forth in §§ 328, 329, 330, and 331. 11 U.S.C. §§ 328, 329, 330, and 331. Section 330(a) provides:

"After notice to any parties in interest ... and a hearing, ... the court may award to ... the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a).

Section 331 provides:

"A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application for reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." 11 U.S.C. § 331.

The Court finds that because of the size of these reorganization cases, the complexity of the issues involved, and the time required on the part of the attorneys for the debtors in providing services necessary to achieve a successful reorganization of the debtors, it is appropriate to allow the attor-

neys for the debtors to apply more frequently than every 120 days for interim compensation.

The Court finds that it would be useful to establish a procedure by which the professionals employed by the debtors in possession and by the Creditors' Committee may seek interim compensation on a monthly basis. Each professional employed by the debtors or the Creditors' Committee may submit, during the first five days of each month, applications for compensation for services rendered in the preceding month. A hearing on these applications shall be scheduled for a convenient date toward the end of the month and notices of that hearing sent to all interested parties. After hearing on notice to interested parties, the Court shall allow further compensation as it deems appropriate.

The question remains concerning the amount of "reasonable compensation for actual, necessary services rendered" by the attorneys for the debtors in possession.

As *Collier* states:

"Under prior law, courts have established certain principles governing the quantum of interim compensation which may be awarded. In respect of most applicants, these principles will carry forward under the Code." 2 *Collier on Bankruptcy,* ¶ 331.03, pp. 331–7 and 8.

Since case law has not established guidelines for awarding interim compensation in cases filed since October 1, 1979, it is necessary to look to guidelines established under prior law. The leading case in this Circuit concerning the allowance of compensation to professional persons employed in the administration of a bankruptcy proceeding is *In the Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977). That case describes a three-step process. The first step is to determine the nature and extent of the services rendered. The second step is to assess the value of those services, and the third step is to explain briefly the logic which dictates the conclusions on the first two issues with reference to the twelve factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714

(5th Cir. 1974). Before embarking upon a discussion of the standards which carry over to the new law from the old, it is necessary to discuss two differences.

Under the law which controlled cases filed prior to the effective date of the Bankruptcy Reform Act of 1978, the rule was that the bankruptcy judge should award attorney's fees in "an amount which is 'at the lower end of the spectrum of reasonableness.'" 544 F.2d at 1299 [citation omitted]. That statement is no longer the law. The express intent of Congress in enacting the Bankruptcy Code is that "[t]he compensation is to be reasonable, for actual, necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a case under the Bankruptcy Code." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 1977, p. 329, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6286.

A second change in the law applies to an award of interim compensation. Under former law, "[t]he rule [was] clear that an allowance for fees should be well below any possible final allowance" when fees are awarded on an interim basis. *In the Matter of Multiponics, Inc.,* 551 F.2d 1049, 1050 (5th Cir. 1977). Under the current law, "a court may allow interim compensation under section 331 in an amount equal to the actual services rendered by the applicant prior to the date of the fee request, i. e., full compensation." 2 *Collier on Bankruptcy* ¶ 331.03, p. 331–6 (15th ed. 1980). Therefore, in order to apply the three-step process for determining the award of attorneys' fees which should be allowed as an interim award, the Court must keep in mind these two differences between prior law and the law of the Bankruptcy Code.

The first step in determining reasonable attorneys' fees for TSL&A and B&P is for the Court to determine the nature and extent of the services performed. Both TSL&A and B&P have fully documented the extent of services performed and the hourly rates normally charged by the petitioning attorneys for the performance of

similar services. The Court finds upon review of the evidence that the services set forth in the applications are actual and necessary services rendered by the attorneys in the administration of these cases.

The second step in determining the amount of attorneys' fees which should be allowed for interim compensation is to assess the value of the services rendered. "Because judges are familiar with the fees charged by the legal profession and experienced at gauging the quality of legal work, no expert opinion evidence is required on this issue, though such evidence may be accepted." 544 F.2d at 1300 [citation omitted]. The Court finds that in these cases, the reasonable value of the services rendered by the attorneys for these debtors in possession since the filing of the petitions is the amount claimed by the attorneys.

The final step requires the Court to explain its findings. The matter of *First Colonial Corp.* sets out twelve factors which should be discussed in the explanation of findings. The first factor concerns the time and labor involved. The attorneys involved in this case have been working on virtually a full time basis on matters arising out of these cases since the filing of these petitions. The Court notes the length of the files in these proceedings and recognizes that extraordinary efforts have gone into the production of this extensive record. The Court is also very familiar with the amount of its own calendar time which has been consumed to date by these proceedings. The amount and time of labor which has been involved thus far in administering these estates and defending the rights of the debtors is well documented and cannot be disputed.

The second factor which the Court must determine is the novelty and difficulty of the legal questions involved. The issues of bankruptcy law involved in this case have not been extraordinarily difficult. However, the factual situation, to which the rather straightforward legal principles involved must be applied, is extraordinary. The debtors operate businesses with operations extending from Curacao, Netherlands Antilles to Tokyo, Japan. Because of the nature of these far-flung enterprises, the attorneys for the debtors in possession have been required to familiarize themselves with the laws of several foreign jurisdictions, as well as with the laws of the United States. The ramifications of the laws of these foreign jurisdictions upon the actions taken in this Court create questions for the debtors in possession which are both novel and difficult. Because of the difficulty of these problems, skillful and resourceful attorneys are necessary in order to address the issues competently. The Court cannot doubt that the issues are complex or that a great deal of skill is required on the part of the attorneys for the debtors in possession to provide competently the legal services required by the debtors in possession in these cases.

Another factor which the Circuit Court has declared that Bankruptcy Courts should take into account in the determination of professional compensation is the preclusion of other employment. TSL&A has indicated that its representation of the debtors in possession in these cases has precluded it from employment in these cases by Touche Ross & Co., the debtors' accountants, and First Georgia Bank, a creditor of the debtors. B&P is a firm composed of two attorneys. It is clear to the Court that the representation of the debtors in possession consumes virtually every working hour of these two attorneys. Therefore, the Court finds that the representation of the debtors in possession by these two law firms precludes each firm from a substantial amount of other employment.

The fifth factor which the Court must take into account involves the customary fees charged by law firms for cases of this nature. The Court notes that the hourly rates established by both TSL&A and B&P for their lawyers in these post-petition requests appear to be reasonable and customary for cases of this nature.

The sixth factor which the Court should discuss is the question of whether the fee is fixed or contingent. In this case the fees are fixed only to the extent that the attor-

neys account for their fees based upon an hourly rate. However, the fees are contingent because they remain subject to approval by this Court and the availability of funds to pay fees in the amount requested. In allowing an administrative expense for the payment of attorneys' fees and costs in this Order, the Court leaves open the possibility that this allowance of interim fees may be subjected to subsequent revisions, either increases or decreases as the Court may deem appropriate. Moreover, while the Court is inclined to allow an administrative expense for the payment of these fees, at this point in time there is no fund available from which these fees may be disbursed. The allowance of fees contained in this Order remain subject to the contingency that such a fund be forthcoming. Furthermore, the final allowance of attorneys fees' claims for services performed will be largely contingent upon the final results achieved in the case. Therefore, the Court finds that, to a large extent, the fees requested in these cases are contingent.

The seventh factor which the Court must discuss is the time limitations imposed upon the attorneys. The time limitations have been severe because of the nature of the cases and the nature of the debtors' business. Since the outset of these cases, the debtors in possession have been subject to an extremely tight cash flow situation. Because of the nature of the businesses involved, a default in obligations to perform could result in severe losses to the debtors in possession, both in terms of going concern value and in terms of the value of their assets. In order to avoid incurring defaults and to alleviate the cash flow difficulties, the attorneys for the debtors in possession have been involved in almost constant efforts to obtain the use of cash collateral. Further time pressures have been placed on the attorneys for the debtors in possession by the extensive discovery in which the parties have engaged. Therefore, the Court finds that the time constraints under which the attorneys have been operating are substantial.

The eighth factor which the Court must address is the amount involved and the results obtained. In this case the debtors and their affiliates have assets with a face value in excess of $35 million. It is only by the efforts of the debtors' attorneys that the businesses of the debtors in possession are still intact. Because of the nature of Japanese law and custom, in particular, the value of both the consumer receivables and the going concern of the businesses could be dissipated almost immediately by defaults in performance of consumer contracts by the debtors and their affiliates. Without the efforts of the attorneys involved, defaults in performance almost certainly would have occurred before this date.

Of course, the fact that the patients are still breathing in this early stage of the operation does not necessarily indicate that they will ever walk again, much less run. The final condition of the debtors will, in large part, determine the ultimate value of the attorneys' services.

The attorneys involved in these proceedings are all experienced, able members of the bar with substantial reputations in the area of commercial and bankruptcy law. The Court finds that no further discussion of this factor is necessary.

The tenth factor which the Court should discuss is the undesirability of the case. The representation of the debtors in possession in these cases consumes large amounts of time and talent for which payment is not assured. Nonetheless, the Court does not find this case to be particularly undesirable. While the case does preclude opportunities for representation of other clients and may not result in full compensation of the attorneys for the efforts expended, these are normal features of the practice of law. Therefore, the Court finds that this is not an undesirable case.

The eleventh factor set forth in the *First Colonial Corp.* case is the nature and length of the professional relationship with the client. TSL&A has represented the debtors, their affiliates and their predecessors for most of the last ten years. B&P has represented the debtors and their affiliates since the formation of B&P in February of

1981. Robert A. Parker, one of the members of B&P, was staff counsel for the debtors and their affiliates for eighteen months prior to February, 1981. Because of this long and continuing professional relationship between the debtors, the affiliates and the two law firms who represent them, the Court finds that comparable services could not be rendered by other attorneys.

The final factor which the Court needs to address is the fees awarded in similar cases. The Court finds that the interim fees allowed pursuant to this Order are, while substantial, not unusual for a case of this size. For this reason and the reasons outlined above, the Court finds that an interim allowance of fees to TSL&A in the amount of $30,000.00 and to B&P in the amount of $34,000.00 is appropriate. The Court, as previously mentioned, declines at this time to allow or disallow the claims for pre-petition attorneys' fees. However, it does find that an award of pre-petition costs is appropriate at this time. Should it later prove that some or all of these costs are not compensable as an administrative expense, an adjustment can be made in future awards of interim compensation or at the time of the final allowance of claims.

While the Court finds it necessary to award interim compensation to the professionals involved in this case, a substantial question remains concerning the source of this compensation. Since the only apparent source of funds from which this interim compensation may be disbursed consists of funds in which the Bank of America claims an interest, the Court finds that it would be inadvisable to allow the disbursement of these funds prior to a ruling on the application to allow use of cash collateral which is currently under advisement. Therefore, the Court finds that while it should allow interim compensation to the professionals employed by the debtors in possession, it is not appropriate to permit disbursements of these funds until the source of funds for disbursement is established.

IT IS SO ORDERED.