In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR-Rohn, Inc., (Alabama), UNR-Rohn, Inc., (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., UNR Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.

Bankruptcy Nos. 82 B 9841—82 B 9851.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 11, 1983.

Malcolm Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for debtors.

Norman H. Nachman, Nachman, Munitz & Sweig, Chicago, Ill., for Trade Creditors' Committee.

Jean K. FitzSimon, U.S. Trustee, Chicago, Ill., for U.S. Trustee.

J. William Cuncannan, Defrees & Fiske, Chicago, Ill., for asbestos-related plaintiffs.

Gregory P. Von Schaumburg, Securities & Exchange Com'n, for SEC.

James C. Murray, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for GAF Corp.

### MEMORANDUM, OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This matter coming on to be heard upon the motions for interim allowances of Counsel for the Trade Creditors' Committee

[Nachman], and of Counsel for the Asbestos-Related Plaintiffs' Committee [Cuncannan], pursuant to Sections 330 and 331 of the Bankruptcy Code [Code], and the responses thereto of the Debtors, UNR INDUSTRIES, INC. *et al.* [Debtors], the SECURITIES & EXCHANGE COMMISSION [S.E.C.], the UNITED STATES TRUSTEE [Trustee], and GAF CORPORATION, [GAF], and

The Court having examined the pleadings filed in this matter, having heard the arguments of counsel and the Court being fully advised in the premises;

The Court Finds:

1. On July 29, 1982, the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Code. Prior to filing, the Debtors were being sued in 51 jurisdictions for injuries due to asbestos-related diseases, and legal fees in the approximate amount of $1,000,000 per month were expended to defend such suits. On July 29, 1982, the Court entered an Order pursuant to Section 1108 of the Bankruptcy Code which continued the debtor in possession and recognized DAVID S. LEAVITT, Chairman of UNR Industries, Inc., as the designated party to act on behalf of the Debtors. On July 29, 1982, the U.S. Trustee was directed to appoint a committee of trade creditors, and on August 2, 1982, said Committee was appointed. On August 9, 1982, said Committee was given leave to retain the Nachman law firm.

2. On August 24, 1982, this Court entered an Order directing the U.S. Trustee to appoint a committee composed of plaintiffs or their representatives in asbestos-related personal injury lawsuits pending against the Debtors. On September 15, 1982, the U.S. Trustee appointed the following as representatives of the Plaintiffs' Committee: ROBERT B. STEINBERG, ROBERT E. SWEENEY, PAUL T. GILLENWATER, THOMAS W. HENDERSON, GENE LOCKS, GORDON A. STEMPLE and REX HOUSTON. On October 19, 1982, this Court entered an Order authorizing the Plaintiffs' Committee to retain J. WILLIAM CUNCANNAN of the law firm of DEFREES & FISKE. By draft order dated February 16, 1983, this Court established procedures for interim compensation in relevant part, as follows:

ORDERED requests by professionals for interim compensation and reimbursement of expenses herein may be made every calendar year quarter.

The first period for which such interim compensation and reimbursement may be requested shall be 7/29/82, through 12/31/82. The court will consider requests for interim compensation and reimbursement thereafter for every calendar year quarter commencing with the quarter starting 1/1/83. Persons requesting compensation and reimbursement shall file their applications with both the court and the clerk of the court within 20 days following the close of the most recent calendar-year quarter, except that for the first period the applications shall be filed by 2/28/83, and objections, if any, to such applications shall be so filed no later than 25 days thereafter.

3. On January 13, 1983, fee applications for the attorneys, accountants, and members of the Trade Creditors' Committee were filed. The fee requests of the attorneys, accountants, and members were as follows:

| | Period Covered | Requests | Total Hours | Hourly Rate |
|---|---|---|---|---|
| Nachman, Munitz & Sweig (Counsel for Creditors' Comm.) | 8/3/82 – 11/30/82 | 127,270.00 Fees 1,174.67 Exp. | 638.25 0. | 70.00 to 250.00 |
| Peat, Marwick & Mitchell (Accountants for Creditors' Comm.) | 8/12/82 – 11/30/82 | 83,832.50 Fees 7,848.26 Exp. | 1,142.0 0. | 30.00 to 175.00 |

| | Period Covered | Requests | Total Hours | Hourly Rate |
|---|---|---|---|---|
| Members of the Creditors' Comm. | 8/3/82 – 11/30/82 | 26,366.28 Exp. | | N/A |

In total, combining the fee and expense requests of the attorneys, accountants and members, the sum of $246,491.71 in interim fees was requested.

4. At the initial hearing on the above-described applications held on February 17, 1983, the Court ordered payment of fees for the members of the Trade Creditors Committee, but upon the recommendation of Nachman, deferred consideration of fees for the accountants for Trade Creditors, Peat, Marwick & Mitchell. At the February 17, 1983 hearing, the Court ordered payment on account to Nachman in the amount of $80,000.00 for services rendered from August 3, 1982 to November 30, 1982. This Court continued the hearing on fees of said counsel to determine what other payments should be made. On February 11, 1983, the Debtors filed an answer to the fee request of Nachman. The Debtors argue that the fees requested are really in the nature of payments at a premium rate which should await the conclusion of the case, rather than interim compensation that would sustain the professionals during the pendency of the Chapter 11. The Debtors argue that the bulk of time that has been expended has not been with unique or complex issues but involves familiarization with the Debtors' business structure. The Debtors argue that the services performed have been routine, and that the hourly rates of $250 and $190 are excessive.

5. The SEC in its response filed on January 28, 1983, argues that the fee requests of Nachman, members and accountants for the Trade Creditors' Committee should be reduced because the amounts requested are really in the nature of final fee requests at a premium rate. The SEC argues that interim fees should only be given in amounts sufficient to sustain professionals during the pendency of reorganization proceedings. The U.S. Trustee in its answer filed on February 2, 1983, adopts the position of the SEC, and further raises the following specific objections to the requests of all professionals:

a) costs of travel above normal coach fares;

b) excessive hotel expenses;

c) travel of more than one person unnecessarily;

d) duplication of services—more than one attorney or accountant at a meeting;

e) professional rates charged for non-professional duties.

In the answer of GAF filed on February 17, 1983, GAF adopts the objections raised by the SEC and the U.S. Trustee, with reference to the fee request of Nachman. On March 29, 1983, the senior noteholders filed a response in support of Nachman's first request for fees.

6. On February 28, 1983, Nachman filed a second request for interim compensation for the period from December 1, 1982, to December 31, 1982, in the amount of 80% of $22,357.50 and $528.90 in costs for a total of 117.75 hours. The Debtors filed an answer on March 15, 1983, and stated that the hourly rates ($250.00 and $190.00 per hour) are excessive. On February 28, 1983, the members and counsel for the Asbestos-Related Plaintiffs' Committee filed applications for interim compensation, as follows:

| | Period | Fees Requested | Hours | Rate |
|---|---|---|---|---|
| Defrees & Fiske | 10/19/82 to 12/31/82 | $101,245.50 Fees 4,651.27 Exp. | 750.8 (74.2 – paralegal hours) | 95.00 to 175.00 |

| | Period | Fees Requested | Hours | Rate |
|---|---|---|---|---|
| Sonnenschein, Carlin, Nath & Rosenthal | 10/19/82 to 12/31/82 | 178.50 Exp. | N/A | N/A |
| Members of Comm. | 10/19/82 to 12/31/82 | 8,424.54 | N/A | N/A |

The Debtors filed an answer to the request for interim compensation of the Plaintiffs' Committee's members on March 18, 1983 and requested vouchers from Rex Houston and Thomas Henderson and objected to travel expenses of Robert B. Steinberg. The Debtors filed an answer on March 18, 1983, to the application for interim attorneys' fees of Cuncannan. The Debtors argue in said answer that the hourly rates are excessive, the services were duplicative and of no benefit to the estate or creditors.

The Court Concludes and Further Finds:

1. Pursuant to Section 330 of the Bankruptcy Code, compensation to attorneys and other professionals may be awarded as follows:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Under Section 331 of the Code, unlike under prior law interim compensation is specifically provided for as follows:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

2. Courts have long noted the complexity and uncertainty in rendering decisions on fee requests. *Cle-Ware Industries v. Sokolsky,* 493 F.2d 863, 865 [6th Cir.1974], *cert. denied* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 [1974]. The award of fees to attorneys and other professionals is largely dependent upon the facts of each case as presented in the applications and itemized statements of services. *Cle-Ware* at 865.

The United States Court of Appeals for the Seventh Circuit has recognized a variety of factors to be considered in determining an award of attorneys fees, recognizing that fees are not to be determined solely on the basis of, "hours spent times billing rate." *Mills v. Eltra Corporation,* 663 F.2d 760, 762–3 [7th Cir.1981]. The Seventh Circuit Court of Appeals has consistently followed the standards set forth in the Code of Professional Responsibility as Adopted by the American Bar Association as follows:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Disciplinary Rule 2–106, cited in *Mills* at 762–3; *Illinois v. Sangamon Construction Co., et al.* 657 F.2d 855, 862 [7th Cir.1981]; *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 [7th Cir.1974].

Recently commentators evaluating and contrasting fee awards pursuant to Rule 219 of the Bankruptcy Rules of Procedure under the Bankruptcy Act and under Sections 330 and 331 of the Bankruptcy Code have detailed criteria for the granting of fees. One of the major differences noted between the Bankruptcy Act and Bankruptcy Code is the explicit provision under current law [Section 331 of the Code] for the granting of interim fees prior to closing of a bankruptcy proceeding. B. Miller, J. Anderson, *New Rules for Compensation in Bankruptcy Proceedings,* 86 Commercial Law Journal, 79, 88 [1981]. A common criticism voiced under the Act was:

[T]he reluctance to grant interim compensation … impeded the administration of the estate … and … attorneys often became the "bank" for the estate, that is, they were forced to pay ongoing salaries and overhead to keep their offices open, while not being compensated for the work which was achieved by bearing these expenses. *Supra.* at 82.

The second major difference between the Bankruptcy Act and Bankruptcy Code noted by commentators is the abandonment of the principle of economy in the administration of estates and, "requiring that fee awards be based on 'the cost of comparable services' in fields other than bankruptcy." [Section 330 Bankruptcy Code.] J. Butenas, *Establishing Attorney's Fees Under the New Bankruptcy Code,* 37, The Business Lawyer 77, 78 [1981].

The difficulties and dilemmas presented by fee applications under the Bankruptcy Act and the remedies provided by Congress under the Bankruptcy Code, has been summarized as follows:

The awarding of attorney's fees is one of the murkiest and most frequently controverted issued in bankruptcy law. The uncertainties of the fee determination process have long been a prime occupational hazard for bankruptcy specialists, and a deterrent to nonspecialists desiring to practice in the bankruptcy field. Expert and novice alike should be encouraged by provisions of the new Bankruptcy Code (the "Code") intended to overrule past practice and allow counsel an opportunity to earn a market-rate fee. *The new attorney's fees standards expressed in the Code are consistent with fee standards followed in antitrust, civil rights and other areas of federal litigation, and with American Bar Association guidelines for setting fees in the open market.* (emphasis supplied.) *Supra.* at 77.

3. However, as the Debtors note in their answer, the purpose of the interim compensation provision is only to relieve attorneys from the economic burden of participating in lengthy and complex bankruptcy proceedings. *In re Mansfield Tire & Rubber Co.,* 19 B.R. 125 [Bkrtcy.N.D.Ohio 1981]. Interim allowances are not to be made in premium amounts based upon a final evaluation of the services rendered; instead, the goal is sustenance with the thought that final awards should reflect the Court's view of the overall value of the services. *In re Mansfield* at 127; *In re Pennsylvania Tire & Rubber Co. of Missis-*

*sippi,* 19 B.R. 124 [Bkrtcy.N.D.Ohio 1980]; *In re Georgia Steel, Inc.,* 19 B.R. 834 [Bkrtcy.M.D.Ga.1982]; *In re Penn Dixie Industries,* 18 B.R. 834, 836 n. 2 [Bkrtcy.S.D. N.Y.1982].

■ 4. With reference to the fee requests of Nachman, the Court has reviewed the application and itemized statements of services for the first and second requests. Pursuant to Section 1103(c)(1) of the Bankruptcy Code, the purposes of a creditors' committee are to aid in the administration of the case, investigate the financial affairs of the debtor, participate in the formulation of a plan, request appointment of a trustee or examiner, and perform such other services as are in the interest of those represented. The instant reorganization is a large and complicated proceeding, presenting numerous financial difficulties and in addition the unique issue of the liquidation of asbestos-related claims. From the Court's past experience in large Chapter 11 cases, it is clear that this proceeding is just in its infancy and may pend for several years. To totally deny or substantially cut the fee requests of Nachman would work an undue hardship upon the attorneys and would, in turn, undercut the effectiveness of the Trade Creditors' Committee. It would be unfair to ask experienced counsel to forego other employment for the next several years without reasonable compensation based upon their expertise and resultant market rate. While the rates charged may appear high, the counsel for the Trade Creditors' Committee are highly respected bankruptcy attorneys with substantial reorganization experience. The fact that at this juncture much of the time spent by said counsel has been in familiarizing themselves with the Debtors' operation should not form the basis for substantial cuts in fees in view of the large and complex nature of this case. Any law firm embarking upon representation of such magnitude would demand and receive substantial retainers before filing an appearance. Economy of administration is no longer a deciding factor in Code cases on the theory that competent bankruptcy counsel should not be penalized for taking liquidation and reor-

ganization cases. However, courts have struck an equitable balance by restricting payment of interim fees to a reasonable percentage or portion of the fees requested. In *In re Pennsylvania Tire & Rubber Co.,* 19 B.R. 124, 125 [Bkrtcy.N.D.Ohio 1980] the court granted interim fees of $50,000 where counsel had requested the sum of $82,410. In *In re Penn Dixie Industries,* 18 B.R. 834, 836 n. 2 [Bkrtcy.S.D.N.Y.1982] the court limited the award of interim fees to 75% of the fees requested. In view of case law, statutes involved and facts of this case, this Court concludes that Nachman, as counsel for the Trade Creditors' Committee, should be paid the remaining portion of his first fee request which amounts to the sum of $47,270, plus expenses of $1,174.67. Said initial payments are in the nature of a retainer, and subsequent requests will be scrutinized more closely and subject to substantial holdbacks where charges appear to be in the nature of premium payments. With reference to the second request of Nachman which encompasses only one month (December 1, 1982 to December 31, 1982) in the amount of $22,357.50 and $528.90 in costs, counsel has agreed to a holdback of 20%. The Court finds that said requests encompassing only thirty days represent a premium payment which should await the conclusion of this proceeding, and payments should be limited to 75% [$16,-768.12] plus payment of costs in full [$528.90].

5. With reference to the first requests of the members and attorneys for the Plaintiffs' Committee for the period from October 19, 1982 to December 31, 1982, the Court concludes that members of the Committee should be paid in full [$8,424.54]. The expenses of Sonnenschein in the amount of $178.50 should be paid in full. Said members are extremely important to the Debtors' reorganization and should be encouraged rather than penalized for their involvement. All future applications should be adequately documented or payments will be delayed. The fee application of Cuncannan, however, requires closer scrutiny. The Court has reviewed the application and at-

tached itemized statement of services, and must conclude that a substantial bulk of the time has been spent in familiarization with the case. While such familiarization is valuable, the role this Court envisioned for said Committee was in the area of devising fair and equitable means for paying asbestos claimants. Much of the time appears to have been spent covering ground properly the province of the Trade Creditors' Committee. However, this Court recognizes that said counsel, to insure the Debtors' reorganization, must play a viable role which, in turn, requires adequate compensation as in the case of Trade Creditors' counsel. The Court considers the fact that this is Cuncannan's first request, and initial awards should be viewed as in the nature of a retainer. Because the role of the Plaintiffs' Committee is limited and sharply defined unlike the pervasive role of the Trade Creditors' Committee, initial awards should be subject to a 60% holdback and the sum of $40,498.20 in attorneys' fees should be paid now with costs to be paid in full [$4,651.27] Payments above these amounts would represent premium payments which must await the conclusion of this case. All counsel are advised that all future allowances will be closely scrutinized to insure that interim payments are limited to that amount necessary to sustain and not penalize extremely competent counsel from participating in this proceeding. It would be unfair and detrimental to the Debtors, shareholders and creditors to award premium payments since this is a large reorganization proceeding with an unusual amount of public interest and impact.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the following fees are allowed as reasonable:

| Nachman, Munitz & Sweig, Counsel for Trade Creditors' Committee | First Request | $47,270.00 | Fees |
| | | 1,174.67 | Costs |

| | Second Request | $16,768.12 | Fees |
| | | 528.90 | Costs |
| Defrees & Fiske Counsel for Plaintiffs' Committee | First Request | 40,498.20 | Fees |
| | | 4,651.27 | Costs |
| Sonnenschein, Carlin Nath & Rosenthal | | 178.50 | Costs |