In re UNR INDUSTRIES, INC., Unarco Industries, Inc., Unr, Inc., Unr-Rohn, Inc., (Alabama), Unr-Rohn, Inc., (Indiana), Jobal Tube Co., Inc., Unr Products, Inc., and Folding Carrier Corporation, Debtors.

Bankruptcy Nos. 82 B 9841–9845, 82 B 9847, 82 B 9849 and 82 B 9851.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 21, 1987.

See also, Bkrtcy., 71 B.R. 467, Bkrtcy., 72 B.R. 789.

Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for debtors.

Ross & Hardies, Chicago, Ill., for Unsecured Creditors Committee.

DeFrees & Fiske, Chicago, Ill., for Official Creditors Committee of asbestos-related plaintiffs.

Kevin Forde, Ltd., Chicago, Ill., Legal Representative.

Gardner, Carton & Douglas, Chicago, Ill., for Senior Noteholders.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter is before the Court on the debtors' motion regarding the allowance of interim fees and expenses for bankruptcy counsel and other professionals.

The debtors' motion was made in response to a moratorium on fees and expenses instituted by the Bankruptcy Judge who previously presided over this case. At this Court's direction, the parties subject to the moratorium filed applications for fees and expenses.[1] The simple issue is whether to lift the moratorium on interim fees and expenses. For the reasons stated below, the moratorium on interim fees to bankruptcy counsel and other professionals shall be continued, while the moratorium on expenses shall be lifted.

### Background

The debtors are a group of affiliated corporations which can collectively be referred to as "UNR." Faced with the expense of defending itself against 17,000 asbestos-related tort and wrongful death suits brought by persons who had been exposed to asbestos manufactured by UNR, and with the potential liability to the

---

1. The Court expressed its preliminary views regarding the moratorium at the hearing held on December 29, 1986. Prior to the hearing, debtors' bankruptcy counsel had not filed an application for fees and expenses. In response to this Court's preliminary ruling, debtors' bankruptcy counsel subsequently filed an application for expenses, which application shall be considered by the Court.

30,000 to 120,000 people who may contract an asbestos-related disease in the future, UNR filed for relief under Chapter 11 of the Bankruptcy Code on July 29, 1982.[2]

Judge Edward B. Toles presided over the UNR bankruptcy from its inception up until his retirement from the bench.[3] As time passed, Judge Toles became dissatisfied with what he perceived as a lack of satisfactory progress in the case.[4] In his determination to move the case forward, on March 6, 1986, Judge Toles informed bankruptcy-related counsel and other professionals that they would no longer be awarded interim fees or reimbursement for expenses until such time as a plan was filed and confirmed. The moratorium was directed at those bankruptcy counsel and other professionals who were deemed responsible for the progress of the bankruptcy proceeding.[5] Progress was measured in terms of the filing and confirmation of a plan. In a broad sense, all counsel employed by UNR render services which promote the progress of this bankruptcy proceeding. However, the moratorium covered only those participants who were or should have been active in negotiating a plan of reorganization. Specifically excluded from the moratorium were counsel who performed other services for UNR not directly related to the Chapter 11 proceeding.[6] They continued to receive interim fees and expenses. See In re UNR Industries, Inc., slip op. (Bankr.N.D.Ill. January 26, 1987).

This Court has been asked to reconsider the moratorium in light of the alleged hardships that this policy works upon some but not all of the professionals involved in these matters.[7]

*Discussion*

Interim compensation is governed by Section 331 of the Bankruptcy Code, which provides:

... a debtor's attorney, or any professional person ... may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

The primary policy behind the awarding of interim compensation under Section 331

---

2. For further discussion on this asbestos-related Chapter 11 proceeding *see In re UNR Industries, Inc.,* 725 F.2d 1111, 1119 (7th Cir.1984); *In re UNR Industries, Inc.,* 46 B.R. 671 (Bankr.N.D.Ill. 1985).

3. Judge Toles retired on October 1, 1986, after 18 years of distinguished service as a Bankruptcy Judge in the Northern District of Illinois.

4. On March 6, 1986, Judge Toles remarked in open Court that "there is no plan on file in this case despite the fact that nearly four years have passed since the filing of this bankruptcy on July 29, 1982. Too much energy is spent by the various parties on matters and issues which clearly do not promote the progress of this bankruptcy proceeding."

5. The following law firms and parties were subject to the moratorium:

Schwartz, Cooper, Kolb & Gaynor, Chtd.—debtors' bankruptcy counsel

Kevin Forde, Ltd.—Counsel to the Legal Representative

DeFrees & Fiske—Counsel to the Official Creditors Committee of Asbestos-Related Plaintiffs

Winston & Strawn—Former counsel to the Unsecured Creditors' Committee

Ross & Hardies—Current counsel to the Unsecured Creditors' Committee

Peat, Marwick, Mitchell & Co.—Accountants for the Unsecured Creditors' Committee

Official Unsecured Creditors' Committee

Official Creditors Committee of Asbestos-Related Plaintiffs

6. Some concern has been raised regarding the continued awarding of fees to Spriggs, Bode & Hollingsworth in light of their participation in preparing the government contract defense on behalf of debtors. The disallowance of fees to Spriggs, Bode & Hollingsworth would not advance the purposes of the moratorium since they are not participants in the formulation and the eventual confirmation of a plan.

7. At the fee hearing held on December 29, 1986, the United States Trustee took the position that the moratorium should be continued until such time as there was some progress made in the case.

is to relieve attorneys from the burden of "financing" lengthy and complex Chapter 11 proceedings. *In re Mansfield Tire & Rubber Co.*, 19 B.R. 125 (Bank.N.D. Ohio 1981). The legislative history of Section 331 provides that:

> The only effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances may be years. H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 42 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5828, 6287.

Courts have rejected the view that a confirmed plan is a prerequisite to an award of interim fees. *In re Werth*, 32 B.R. 442, 446 (Bankr.D.Colo.1983); *In re International Horizons*, 10 B.R. 895 (Bankr.Ga. 1981); *In re Quick Release, Inc.*, 6 B.R. 713 (Bankr.S.D.1980). This result is consistent with the plain language of Section 331 as well as its legislative history.

▪ In the case at bar, the moratorium on interim fees to bankruptcy counsel shall continue until such time as this Court is convinced that this case is moving toward a point of resolution. The moratorium on fees to bankruptcy counsel was an extraordinary measure warranted by extraordinary circumstances. The numbers speak for themselves. Almost five years have passed since the filing of this case (July 29, 1982) and nearly $21,334,999.19 in fees and expenses have been awarded to the attorneys and other professionals employed in this case.[8] Of this amount, $4,498,395.25 in fees and expenses have been awarded to bankruptcy counsel and other professionals. In a case of this size and complexity, a great deal of time and expense could be spent on collateral matters. It would be easy to stray from the essential purpose of these proceedings and to lose focus. Some direction was restored in this case when fee awards to bankruptcy counsel were stopped. Shortly after the moratorium on fees to bankruptcy counsel, a plan was filed, June 5, 1986. These events may not be connected, however, an inference of causation is unavoidable. This direction could be lost if the moratorium were lifted. This is a risk the Court is not willing to take.

▪ Final fee awards reflect a court's view of the overall value of the services rendered by the attorneys. *In re UNR*, 30 B.R. 613, 617 (Bankr.N.D.Ill.1983). In contrast, the goal behind the awarding of interim fees is sustenance. *Id.* at 617. The record in this case clearly indicates that sustenance has been achieved with respect to fees previously awarded bankruptcy-related counsel. More specifically, bankruptcy counsel and other professionals have been awarded the following amounts:

|  | Fees | Expenses |
|---|---|---|
| Schwartz, Cooper, Kolb & Gaynor (debtors' bankruptcy counsel) | $1,149,210.94 | $51,867.06 |
| Kevin Forde, Ltd. (counsel to the Legal Representative) | 49,351.39 | 445.66 |
| DeFrees & Fiske (counsel for the Official Creditors' Committee of Asbestos-Related Plaintiffs) | 852,435.38 | 123,745.18 |
| Winston & Strawn (former counsel to the Unsecured Creditors' Committee) | 249,930.93 | 20,405.77 |
| Peat, Marwick, Mitchell & Co. (accountants for the Unsecured Creditors Committee) | 619,360.49 | 102,720.43 |
| Official Unsecured Creditors' Committee |  | 140,284.63 |
| Official Creditors' Committee of Asbestos-Related Plaintiffs |  | 78,995.53 |

---

**8.** Fees and expenses have been awarded to date in the following amounts:

| Interim Fees | $18,916,984.65 |
|---|---|
| Expenses | 2,418,014.54 |
| Total | $21,334,999.19 |

The Court does not believe that the moratorium on fees will place the burden of financing this Chapter 11 proceeding on bankruptcy counsel. Thus, the policy behind interim compensation under the Bankruptcy Code as set forth in section 331 will not be frustrated.

The fact that the moratorium on fees shall be continued is not to be interpreted as a slur on the conscientiousness or motives of bankruptcy counsel. The Court does not suggest improper motivation or lack of vigorous representation. Indeed, the very dedication of counsel may be the indirect cause of the problem.

In theory, regulation of the fees of professionals may be left to market forces. The fees that a lawyer charges will be limited by the price at which a client could obtain comparable legal services from another attorney. A one-dimensional model of the decision-making process in non-bankruptcy cases may be described as follows. The attorney explains the likely outcome of his/her legal activity on behalf of the client and advises the client as to the expected cost of achieving that result. The client then decides whether the benefit to be derived warrants the cost and tells the lawyer to proceed, to refrain, or to proceed on a modified basis.

Sections 327 and 328 of the Bankruptcy Code represent a determination by Congress that the model does not work well in the bankruptcy context in general and in Chapter 11 proceedings in particular.[9] The expenses of a committee appointed under Section 1102 including any fees of professionals retained by said committee (approved by the court pursuant to Section 330) may be allowed as administrative claims and payable by the debtor. In applying its cost benefit equation, the committee (or rather its members) are not weighing (direct) costs to themselves and,

therefore, there is a great temptation to go "flat-out" because the debtor is financing the gamble.

The debtor's attorney(s) is more closely akin to the attorney in the model because his/her client must pay the bill. But this apparent congruence breaks down in those cases where the only assets belong or will be distributed to the creditors in a liquidation or reorganization so the "cost" to the debtor is negligible. For these reasons (and others) fees of professionals employed pursuant to the authority of the Bankruptcy Court must be reviewed by the Court.

The issues that must be resolved before these cases may be disposed of are difficult and important.[10] That counsel for the debtor and other entities responsible for negotiating a plan of reorganization are methodical is to be applauded. Yet, those cases will never be resolved unless the twin goals of these proceedings—a fair and equitable plan—are kept in focus.

The time may be at hand in this case when those parties charged with the responsibility of negotiating a plan, must cease their efforts to provide for every contingency, however remote, and get on with the task of creating a plan which strikes the proper balance between the real benefits to be derived and the costs necessary to generate those benefits.

Attorneys fees continue to mount to levels that can only be described as extraordinary. It will serve no one's interests if in the future it is said, "We practiced great medicine, but the patient died on the operating table." Negotiating the perfect plan will be a hollow accomplishment if the trauma and costs of the Chapter 11 proceeding are so great that the debtor is no longer viable. This result must be avoided.

---

9. Section 327 covers the employment of professional persons, while section 328 deals with the limitations on compensation for professional persons. 11 U.S.C. §§ 327, 328. *See also*, Bankruptcy Rule 2016.

10. For example, the issue as to whether future claimants—those persons who have been exposed to UNR's asbestos, have not yet gotten

sick, but who, in the future, will be diagnosed as having an asbestos-related disease as a result of that exposure—are in fact "creditors" for Bankruptcy Code purposes, with claims which can be discharged in bankruptcy, is an issue which is still unresolved. *See, In re UNR Industries, Inc.,* 725 F.2d 1111; *In re UNR Industries, Inc.,* 71 B.R. 467 (Bankr.N.D.Ill.1987).

It is not the intention of this Court to continue the moratorium on fees until such time as a plan is confirmed. *See, In re Werth,* 32 B.R. at 446. This Court will be inclined to lift the moratorium on fees when it is convinced that significant progress is being made in this case.

This Court is of the opinion that bankruptcy counsel should be reimbursed for expenses which they have incurred. The objectives sought can be achieved by the moratorium on fees.

*Expense Applications*

■ The Court has reviewed the expenses incurred by each Applicant. The reimbursement of out-of-pocket expenses awarded to each Applicant is for actual and necessary expenses.

1. Applicant DeFrees & Fiske is the counsel for the Official Creditors' Committee of Asbestos-Related Plaintiffs. In its twelfth request for reimbursement of expenses for the period November 1, 1985 through October 31, 1986, the Applicant requests reimbursement for additional out-of-pocket expenses in the amount of $55,431.02.

The Court allows Applicant's out-of-pocket expenditure of $55,431.02 for transportation and other travel-related expenses, duplication, telephone and transcripts.

2. Applicant Kevin M. Forde, Ltd. is the counsel for the Legal Representative for Unknown Putative Claimants. In its third request for reimbursement of expenses for the period November 1, 1986 through October 31, 1986, the Applicant requests $2,910.36 as reimbursement for additional out-of-pocket expenses.

The Court allows Applicant's out-of-pocket expenditure of $2,910.36 for duplication, mailing, filings, and transportation expenses.

3. Applicants Paul T. Gillenwater and Robert E. Sweeney are members of the Official Creditors' Committee of Asbestos-Related Plaintiffs. In their request for reimbursement of expenses for the period November 1, 1985 through October 31, 1986, Applicants request $7,373.19 as reimbursement for additional out-of-pocket expenses.

The Court allows Applicants' out-of-pocket expenditure of $7,373.19 for travel, food and lodging, duplication, and telephone expense.

■ 4. Members of the Official Unsecured Creditors' Committee have filed their twelfth request for reimbursement for out-of-pocket expenses in the amount of $26,035.28, for the period November 1, 1985 through December 11, 1986. The Court shall only consider expenses incurred for the period November 1, 1985 through October 31, 1986, as was done for all the other Applicants in these proceedings.

The Court allows members of the Official Unsecured Creditors' Committee reimbursement for expenses in the amount of $24,145.81 for travel, food and lodging, telephone and mailing costs.

5. Applicant Peat, Marwick, Mitchell & Co. is the accounting firm for the Official Unsecured Creditors' Committee. In its twelfth request for reimbursement of expenses for the period November 1, 1985 through October 31, 1986, Applicant requests reimbursement for additional out-of-pocket expenses in the amount of $11,576.63.

The Court allows Applicant's out-of-pocket expenditure of $11,576.63 for travel-related expenses, duplication, mail charges, database searches and telephone charges.

6. Applicant Ross & Hardies is current counsel for the Official Committee of Unsecured Creditors, and their employment was effective September 29, 1986. In its first request for reimbursement of expenses for the period September 29, 1986 through October 31, 1986, Applicant requests reimbursement for out-of-pocket expenses in the amount of $1,238.26.

The Court allows Applicant's out-of-pocket expenditure of $1,238.26 for travel-related expenses, duplication, word processing, transcripts and telephone charges.

7. Applicant Schwartz, Cooper, Kolb & Gaynor, Chartered represents the Debtors in these bankruptcy proceedings. In its eighth request for reimbursement of ex-

penses for the period November 1, 1985 through October 31, 1986, Applicant requests $11,852.97 as reimbursement for additional out-of-pocket expenses.

The Court allows Applicant's out-of-pocket expenditure of $11,852.97 for duplication, lexis research, postage, travel-related expenses, messenger deliveries, transcripts, mailing charges and telephone charges.

8. Applicant Winston & Strawn was the former counsel for the Official Committee of Unsecured Creditors, and their employment was terminated on September 29, 1986. In its fifth request of reimbursement of expenses for the period November 1, 1985 through September 29, 1986, Applicant requests reimbursement for additional out-of-pocket expenses in the amount of $33,168.33.

The Court disallows $900.24 for local travel and meal expenses. The Court allows Applicant's out-of-pocket expenditure of $32,268.09 for duplication, travel-related expenses, secretarial overtime, word processing expenses, messenger deliveries, computerized legal research, mail charges and telephone charges.

IT IS THEREFORE ORDERED that the Applicants are hereby awarded reimbursement of out-of-pocket expenses in the following amounts:

| Applicant | | Total Amount |
|---|---|---|
| DeFrees & Fiske (twelfth expense request) | | $55,431.02 |
| Kevin M. Forde, Ltd. (third expense request) | | 2,910.36 |
| Members of the Official Creditors Committee of Asbestos-Related Plaintiffs: | | |
| Paul T. Gillenwater | $4,235.69 | |
| Robert E. Sweeney | 3,137.50 | 7,373.19 |
| Members of the Official Unsecured Creditors Committee: | | |
| Bethlehem Steel | 5,709.37 | |
| NVW (USA), Inc. | 3,387.80 | |
| Nationwide Life Insurance Co. | 3,890.02 | |
| Principal Mutual Life Insurance Co. | 7,476.43 | |
| New England Life Insurance Co. | 3,682.19 | 24,145.81 |
| Peat, Marwick, Mitchell & Co. (twelfth expense request) | | 11,576.63 |
| Ross & Hardies (first expense request) | | 1,238.26 |
| Schwartz, Cooper, Kolb & Gaynor Chartered (eighth expense request) | | 11,852.97 |
| Winston & Strawn (first expense request) | | 32,268.09 |