**In re MET–L–WOOD CORPORATION, a Delaware corporation, Debtor.**

**Bankruptcy No. 84 B 15506.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 15, 1989.

Towbin and Zazove, Chicago, Ill., for debtor.

Harvitt & Gekas, Ltd., Chicago, Ill., Trustee.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the Court on the Trustee's objection to the Debtor's counsel's Application for Interim Expense Reimbursement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction. The following constitutes the Court's findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052. For the reasons stated below, the Trustee's objection is denied and Debtor's counsel will be awarded reimbursement for its "ordinary and extraordinary" expenses.

*Background*

On December 6, 1984, MET–L–WOOD CORPORATION [Debtor] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code [Code]. FREDERICK L. PIPIN [Pipin] was Met–L–Wood's chief executive officer and controlling shareholder. Prior to commencement of this case, the Debtor employed Daniel Zazove and the law firm of TOWBIN AND ZAZOVE, LTD. [Towbin] as its counsel.[1] At the time, Debtor was in default on its obligations to its primary secured creditors, AMERICAN NATIONAL BANK and TRUST CO. OF CHICAGO [American] and MORAMERICA CAPITAL CORPORATION [MorAmerica]. In fact, American and MorAmerica had scheduled a public sale of the Debtor's assets for December 10, 1984. However, upon the Debtor's filing of the petition, the Code's automatic stay provision took effect, preventing the secured creditors from proceeding with the scheduled foreclosure sale. On December 10, 1984, the Court authorized the employment of Towbin as counsel for the Debtor–In–Possession.

On the same day, the Debtor, American and MorAmerica moved the bankruptcy court to allow the scheduled sale of the Debtor's assets to proceed. The bankruptcy court granted the motion on December 10. All of the Debtor's assets (except its accounts receivable) were sold for $425,000. On December 11, 1984, the bankruptcy court approved the sale. The Debtor's accounts receivable were later collected and yielded approximately $800,000. The secured creditors were paid and the remainder of the proceeds left for distribution to the remaining creditors.

Subsequently, the Chapter 11 Creditors' Committee and its counsel commenced an investigation into the circumstances surrounding the sale. The Committee moved

---

**1.** Towbin received a pre-petition retainer of $35,000.00. Towbin acknowledges that it must apply this retainer towards payment for its services, when either interim or final compensation is allowed.

to convert the proceeding to a Chapter 7 case so that a trustee could be elected. On June 26, 1985, the Committee's unopposed motion was granted. Thereafter, the Chapter 11 committee members organized themselves as the Chapter 7 Committee and elected Constantine Gekas as the Chapter 7 Trustee [Trustee]. The Trustee continued the investigation into the sale of the Debtor's assets. There followed a series of motions in this Court and complaints in the United States District Court that have consumed a great deal of the resources and energies of all involved.

On April 29, 1986, the Trustee moved to disqualify Towbin from further representation of the Debtor on the grounds of alleged conflicts of interest. Towbin employed the law firm of Jenner & Block to represent the firm and on September 11, 1986, the bankruptcy court denied the Trustee's motion.

On July 24, 1986, pursuant to Federal Rule of Civil Procedure 60(b), the Trustee and the Chapter 7 Creditors' Committee moved the bankruptcy court to vacate the December 11, 1984 sale order of the Debtor's assets, because of an alleged "fraud on the court." The bankruptcy court converted the 60(b) motion to an adversary proceeding. The Trustee alleged that Daniel Zazove, a partner in Towbin, was being investigated for his role in the sale. Jenner & Block was again retained by Towbin to investigate the Trustee's charges and to represent its interests. The defendants, the Debtor, American and MorAmerica moved to dismiss the adversary proceeding.

On February 27, 1987, the adversary proceeding was dismissed. The Trustee appealed and the district court affirmed this Court's decision in *Gekas v. Met–L–Wood*, 80 B.R. 912 (D.C.N.D.Ill.1987). Undaunted, the Trustee appealed the district court's decision to the Seventh Circuit Court of Appeals, which affirmed the district court's holding in *In re Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir.1988) cert. denied, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

Subsequently, the Trustee moved, pursuant to Bankruptcy Rule 2004, to examine Daniel Zazove as to his role in the sale of the Debtor's assets. Towbin retained Jenner & Block to represent it in opposing the Trustee's motion. This motion was eventually denied.

Towbin also employed Jenner & Block to represent Daniel Zazove at his deposition in the district court action. The Trustee subsequently admitted in a pleading that Towbin was not involved in the purported fraud.

The cost of Jenner & Block's services in representing Towbin as of May 31, 1988 was approximately $50,000. Towbin has paid said amount and now seeks reimbursement for what it calls this "extraordinary expense." In addition, Towbin also seeks reimbursement for what it labels as its "ordinary expenses" of $3,827.00.

*Discussion*

The Trustee does not contend that the services for which reimbursement is sought were not rendered; nor does the Trustee vigorously contest the reasonableness of the amount claimed. Instead, the Trustee's principal objections are that no prior court approval of Jenner & Block's engagement was obtained as required by the Code and that even if there had been prior court authorization, the services rendered were for the benefit of the Debtor's principal and therefore should not be compensated out of estate funds.[2]

Towbin responds that prior court authorization was not required because Jenner & Block represented Towbin and not the Debtor, the Trustee or the Creditors' Committee. Towbin also argues that, but for

---

**2.** The Trustee also argues that estate funds cannot be used to pay the fees of the Debtor's criminal counsel. While the Court agrees with this general proposition, it has no application in the case at bar. Towbin was not the subject of any criminal investigation nor charged with any criminal wrongdoing. The fact that the U.S. Attorney's Office for the Northern District of Illinois, investigated the sale of the Debtor's assets, does not mean that Jenner & Block was Towbin's criminal counsel. *Cf. In re Duque*, 48 B.R. 965 (S.D.Fla.1984); *In re United Church of the Ministers of God*, 84 B.R. 50 (E.D.Pa.1988).

the activities of the Trustee, the services of Jenner & Block would have been unnecessary. Towbin asserts that the cost of the services rendered by Jenner & Block incurred by Towbin was as a direct consequence of Towbin's authorized representation of the Debtor. Towbin seems particularly upset that this substantial expense was caused by what it considers ill-conceived accusations made and litigation filed by the Trustee. As evidence of the frivolous nature of the Trustee's activities, Towbin cites the string of rulings adverse to the Trustee in seeking to set aside the December 10, 1984 sale.

Where a trustee, creditors' committee, or a debtor-in-possession seeks to employ a professional person, the Bankruptcy Code requires prior court authorization. *See*, 11 U.S.C. § 327(a); 1103(a) and 1107(a). Professional services rendered for a bankruptcy estate are compensable out of estate assets only if such professional services were authorized by the court prior to the services being rendered. *In re Morton Shoe Companies, Inc.*, 22 B.R. 449 (Mass. 1982). The fact that such services may have been beneficial or valuable to the estate and performed in good faith is immaterial, as is any hardship to the unauthorized professional. *Matter of Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981). This rule must necessarily be firm in order to "maintain control of costs." *In re Garland*, 8 B.R. 826, 828 (Mass.1981). Otherwise, the "necessary power of the court to ensure that assets of the estate are not wasted", would be undermined. *In re Fiberglass Specialty Co., Inc.*, 12 B.R. 119, 121 (Minn. 1981).

In the present case, the identity of Jenner & Block's client in the various proceedings initiated by the Trustee is clear. Jenner & Block represented Towbin and Zazove. Because Jenner & Block was not retained to represent the Debtor, the Trustee, or the Creditors' Committee, Jenner & Block's employment did not require court approval.

The next issue is whether Towbin is entitled to indemnification from the estate for its legal expenses. Towbin cites the general principle of agency that an agent is entitled to indemnification for all expenses incurred in fulfilling the agent's obligations, including attorney's fees and costs. *See, Restatement (Second) of Agency*, § 439 (1957). While not disputing the validity of the general principle, the Trustee asserts that Towbin was not an agent of the estate, but rather an agent for the Debtor's principal, Pipin. In essence, the Trustee looks to rehash allegations in this Court that have been rejected by every other court to have considered the issue. The Court finds that Towbin was not acting as agent for Pipin in connection with the matters herein involved. The services rendered by Jenner & Block in this case were to Towbin and Zazove in providing representation and counsel relating to accusations as to the propriety of Towbin and Zazove's actions as attorneys for the Debtor. That Pipin would benefit if Towbin was vindicated does not alter the conclusion that the services were intended primarily to benefit Towbin & Zazove.

The exact nature of the attorney-client relationship has, through the years, been the subject of considerable judicial debate. *See*, 7A C.J.S. Attorney & Client § 179. The prevailing modern view is that an attorney-client relationship is one of agency to which the general rules of agency apply. *Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir.1973); 7A C.J.S. Attorney & Client § 179; Restatement (Second) of Agency § 1 (1957). Under Illinois agency law, an agent acting within the scope of his authority may defend against a third-party claim and recover the expenses incurred from its principal, including attorney's fees. *Moricoli v. P & S Management Co., Inc.*, 104 Ill.App.3d 234, 60 Ill.Dec. 4, 432 N.E.2d 903 (1982).

Towbin contends that the Code has codified this agency principal in § 330. § 330(a)(2) provides that after notice and a hearing, "the court may award to the debtor's attorney reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(2). The Code does not purport to define "actual and necessary" expenses. § 331 allows any professional person em-

ployed pursuant to § 327 or § 1103 of the Code, to apply to the court for interim compensation and reimbursement. 11 U.S.C. § 331.[3] The allowance of a claim for actual, necessary expenses is an administrative expense, entitled to a first priority distribution under 11 U.S.C. § 507(a)(1). In deciding whether to approve an interim compensation application, the court must weigh important competing interests. On the one hand, the court must consider the primary policy behind the awarding of interim compensation under § 331, which is to relieve attorneys from the burden of financing lengthy and complex Chapter 11 proceedings. *In re UNR Industries, Inc.,* 72 B.R. 796, 798–99 (N.D.Ill.1987). But, on the other hand, the court must weigh the interests of preserving the estate and protecting its various classes of creditors. *In re Tri–County Water Ass'n, Inc.,* 91 B.R. 547, 549 (D.S.D.1988).

It is well-settled that a debtor's attorney is not entitled to compensation from the estate unless his services benefitted the estate. *In re Ryan,* 82 B.R. 929 (N.D.Ill. 1987). Towbin does not claim that Jenner & Block's services benefitted the estate. Rather, Towbin asserts that under the principal of "fundamental fairness", it is entitled to reimbursement from the estate, notwithstanding a lack of benefit to the estate.

In support of that proposition, Towbin cites *Reading Co. v. Brown,* 391 U.S. 471, 479, 88 S.Ct. 1759, 1763, 20 L.Ed.2d 751 (1968) in which the Supreme Court stated that persons "subjected to loss and expense as a result of the administration of a bankruptcy estate are entitled to be made whole as a matter of fundamental fairness and will be allowed administrative expense claims to implement that result." In *Reading,* the issue was "whether the negligence of a receiver administering an estate under a Chapter XI arrangement gave rise to an "actual and necessary" cost of operating the debtor's business." *Id.* 391 U.S. at 476,

88 S.Ct. at 1762. The Court held that tort claims arising during an arrangement are actual and necessary expenses of the arrangement. *Id.* 391 U.S. at 482, 88 S.Ct. at 1765. The Court reasoned that it is "more natural and just to allow those injured by operation of a business during an arrangement to recover ahead of those for whose benefit the business is carried on." *Id.*

*Reading's* rationale has been extended beyond the tort area. In *In re Charlesbank Laundry, Inc.,* 755 F.2d 200 (1st Cir. 1985), the court found that a fine for civil contempt arising from the debtor-in-possession's willful violation of a state court injunction gave rise to an administrative expense. *See also, Carter–Wallace, Inc. v. Davis–Edwards Pharmacal Corp.,* 443 F.2d 867, 874 (2d Cir.1971) (damages resulting from the infringement of the plaintiff's patent occurring while the trustee was operating the debtor's business, treated as administrative expense); *In re Packer Ave. Associates,* 1 B.R. 286 (E.D.Pa.1979) (claim arising from trustee's breach of contract treated as administrative expense). Moreover, an administrative claim has been allowed where the court found that the debtor-in-possession engaged in frivolous litigation. *See, In re E.A. Nord Co., Inc.,* 78 B.R. 289 (W.D.Wash.1987). As the Seventh Circuit observed, "those injured during administration of [the] estate by the Trustee [are] entitled to priority as an administrative expense." *Yorke v. NLRB,* 709 F.2d 1138, 1143 (7th Cir.1983) *citing Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

It is undisputed that, but for the Trustee's actions, Towbin would not have incurred its considerable legal expense. The crux of the dispute is whether this expense must be borne by Towbin or by the unsecured creditors, on whose behalf the Trustee acted. The Court finds that the facts of this case fall squarely within the rationale of *Reading.* Accordingly, fairness dictates that the unsecured creditors bear the cost

---

**3.** § 331 must be read in conjunction with Bankruptcy Rule 2016 which provides that, "a person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bank.P. 2016.

of Towbin's expense. It was, after all, the Trustee's conduct in this case that caused Towbin to incur its legal expense.

■ The Court next considers whether Towbin is entitled to a Chapter 11 administrative expense priority or a Chapter 7 administrative expense priority. Neither Towbin nor the Trustee addressed this issue. Yet, whether Towbin's claim is satisfied in whole or in part may depend on its priority status. § 726(b) provides that administrative expenses incurred after a case is converted to a case under Chapter 7 have priority over administrative expenses incurred prior to conversion. 11 U.S.C. § 726(b). It is undisputed that Towbin employed Jenner & Block after the Chapter 11 case was converted to a Chapter 7. Accordingly, the Court finds that Towbin's legal expense will be allowed as a Chapter 7 administrative expense.

■ Although the Court finds that Towbin is entitled to reimbursement from the estate for its "extraordinary expense", the Court will not distribute the entire sum sought by Towbin at this time. Instead, Towbin will only be awarded half of the entire amount now. Towbin must wait until the close of the case for the balance so the Court may ascertain whether there are sufficient funds in the estate to satisfy in full administrative expenses. If there are insufficient funds in the estate to satisfy allowed § 726(b) claims in full, the funds on hand will be shared pro rata by each § 726(b) claimant. *In re Energy Co-op., Inc.*, 55 B.R. 957, 968 (N.D.Ill.1985).

■ The Court next addresses Towbin's claim for reimbursement for what it labels "ordinary expenses" in the sum of $3,827.30, arising from photocopying charges, computer research and the like. Although the Trustee has not objected to this claim, the Court has the duty to examine this request *sua sponte*. *See, In re Wildman*, 72 B.R. 700 (N.D.Ill.1987). Upon a review of this application, the Court finds that it satisfies the requirements of § 330(a)(2). Accordingly, Towbin is entitled to reimbursement for its "actual and necessary" expenses in the sum of $3,827.30. Towbin, however, will also have to wait until the close of the Chapter 7 case before receiving this distribution.

### Conclusion

IT IS HEREBY ORDERED that Towbin and Zazove's request for "extraordinary expense" reimbursement of $49,705.08 is allowed as a Chapter 7 administrative expense. Towbin and Zazove is to receive one-half of this sum now and the balance at the close of the case.

IT IS FURTHER ORDERED that Towbin and Zazove's request for "ordinary expense" reimbursement of $3,827.30 is also allowed as a Chapter 7 administrative expense. This sum is to be distributed at the close of the case.