In re the GRABILL CORP., an Illinois corporation, F.E.I.N. 36–3213792, Windsor–Hamilton, Ltd., an Illinois corporation, F.E.I.N. 36–3492216, Foxxford Group, Ltd., an Illinois corporation F.E.I.N. 36–3567177, Camdon Companies, Inc., an Illinois corporation, F.E.I.N. 36–3493930, the Techna Group, Ltd., an Illinois corporation, F.E.I.N. 36–3565211, Debtors.

(Jointly Administered Cases)

Bankruptcy Nos. 89 B 01639–89 B 01643.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 26, 1990.

Robert Radasevich, Raleigh & Helms, Chicago, Ill., for Thomas E. Raleigh, Trustee in related case of William J. Stoecker.

Michael L. Molinaro, Katten, Muchin & Zavis, Chicago, Ill., for Katten, Muchin & Zavis.

Michael Solow, Hopkins & Sutter, Chicago, Ill., for Jay A. Steinberg, Trustee.

Jay A. Steinberg, Hopkins & Sutter, Chicago, Ill., Trustee.

Richard C. Friedman, Office of U.S. Trustee, Chicago, Ill.

MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the first and final application of Katten, Muchin & Zavis ("KMZ") as attorneys for the Debtors-in-possession pursuant to 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016 for an allowance of $69,108.50 in compensation and reimbursement of ex-

penses in the amount of $9,868.92 for the period February 3, 1989 through September 28, 1989. Proper notice was given to all creditors and parties in interest pursuant to Federal Rule of Bankruptcy Procedure 2002. Objections were filed by the following parties: Jay Steinberg the Chapter 11 Trustee of the Debtors (the "Trustee"); Thomas E. Raleigh ("Raleigh"), the Trustee in the related case of William J. Stoecker ("Stoecker"); The Connecticut Bank and Trust Company, N.A., Bank of New England Corporation, National Bank of Detroit, Indiana National Bank, Exchange National Bank, Manufacturers National Bank of Detroit, Citibank, N.A., Australia and New Zealand Banking Group, Ltd., Harris Trust and Savings Bank, LaSalle National Bank, and The Bank of Bellwood (collectively the "Banks"); and M. Scott Michel, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee").

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), and (O).

## II. FACTS AND BACKGROUND

Many of the facts, background and some of the history of these Chapter 11 cases are contained in earlier Opinions of the Court. *See In re Grabill Corp.*, 110 B.R. 356, 358 (Bankr.N.D.Ill.1990); *In re Grabill Corp.*, 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989); *In re Stoecker*, 103 B.R. 182, 184–185 (Bankr.N.D.Ill.1989). KMZ was originally retained pre-petition by the Debtors on or about January 11, 1989. The following day, the Debtors paid KMZ a $50,000.00 retainer. Subsequently, on January 30, 1989, KMZ was paid an additional $250,-000.00. Several Banks filed involuntary Chapter 7 petitions against the Debtors on January 31, 1989. Consensual orders for relief were thereafter entered on February 3, 1989. The Debtors moved, pursuant to

11 U.S.C. § 706(a), to convert the cases to Chapter 11. The Trustee was initially appointed with limited powers to preserve the assets of the estates. At that point in time, KMZ expended time and services totalling $115,012.60, which were charged against the retainer. Consequently, the remaining retainer was reduced to $184,-987.40.

On February 8, 1989, KMZ applied to be employed as attorneys for the Debtors-in-possession. Pursuant to its affidavit under Federal Rule of Bankruptcy Procedure 2014(a), KMZ disclosed its prior simultaneous representation of the Debtors and Stoecker. Objections to KMZ's employment were made by the U.S. Trustee and several of the Banks on the grounds that such dual representation posed a conflict, thus barring KMZ from representing the Debtors-in-possession pursuant to 11 U.S.C. §§ 327 and 101(13). The Court sustained the objections on February 8, 1989 and denied KMZ's employment. Thereafter, on May 17, 1989, pursuant to the Trustee's request, KMZ transferred $100,000.00 of the remaining retainer to the Trustee. KMZ presently holds the balance of $84,-987.40.

## III. ARGUMENTS BY THE PARTIES

KMZ asserts that its services and expenses incurred were reasonable, necessary and benefitted the Debtors' estates to the full extent of the amounts requested. KMZ contends that substantial amounts of time and effort were expended by multiple attorneys and paralegals in order to represent the Debtors in their disputes with the various Bank lenders; to cooperate with the Trustee and others; to prepare initial bankruptcy pleadings and other papers; to assist in the transition of new counsel for the Debtors after KMZ's disqualification; and to perform a variety of miscellaneous functions, including preparation of the instant fee application. KMZ expended a total of 523.60 hours for these services.

The objections were made on several grounds. The objectors argue KMZ should not be compensated for any services subsequent to its disqualification on February 8,

1989, otherwise the Order denying employment is rendered meaningless. Moreover, the objectors contend KMZ's application did not disclose its fees and expenses for either the period from the date of retention to the date before the petition was filed or for the involuntary "gap period" before the consensual orders for relief were entered. Furthermore, some objectors claim that KMZ's disqualification bars the award of any fees for the entire period covered by the application. One objection notes that because of KMZ's denial of qualification under section 327, the only statutory basis to compensate it is under sections 503(b)(3)(D) and (b)(4) which are inapplicable. Additionally, the objectors argue that some of the services rendered were to resist the appointment of the Trustee, and hence were of no benefit to the estate. Some objectors further contend KMZ should be required to pay interest on the $100,000.00 from the date of the orders for relief, until it ultimately turned that money over to the Trustee, plus interest on the remaining retainer funds which are ordered to be disgorged.

To meet some of the objections, KMZ supplemented the fee application. KMZ asserts that there is no real challenge made to the reasonableness or necessity of any of the fees requested. KMZ defends the application and justifies the substantial amount of time, services and expenses sought because of the magnitude of the Debtors' business operations and KMZ's lack of any previous representation of the Debtors. The supplement included, as an exhibit, time sheet summaries of services performed from January 11, 1989 through January 30, 1989, as well as the services performed during the "gap period" from January 31, 1989 through February 2, 1989. The Court held an evidentiary hearing on March 29, 1990. Thereafter, the matter was taken under advisement.

## IV. ISSUE

The issue is whether KMZ, as attorney for the Debtors-in-possession, may be properly awarded any compensation, notwithstanding its disqualification and lack of employment under 11 U.S.C. § 327. Unfortu-

nately for KMZ, the answer is no, based upon the authorities and reasons discussed below.

## V. DISCUSSION

### A. APPLICABLE STATUTORY STANDARDS

In order to promote a clear understanding of the issue at bar, it is necessary to set forth the relevant provisions attorneys or other professional persons employed for a debtor-in-possession must follow in making an application for compensation in a bankruptcy case. Section 330 provides that the Court may award to a professional person *employed under section 327* or 1103 reasonable compensation for actual, necessary services. 11 U.S.C. § 330(a)(1) (emphasis added). Section 327(a) provides a two-prong test for employment of professional persons by debtors-in-possession in Chapter 11 cases. First, the professional must not hold or represent an interest adverse to the estate. Second, the professional must be a disinterested person. Section 101(13) defines a disinterested person as one who "does not have any interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(13)(E).

The procedure for obtaining approval of employment is contained in Federal Rule of Bankruptcy Procedure 2014(a). Bankruptcy Rule 2014(a) provides in relevant part:

An order approving the employment of attorneys ... or other professionals pursuant to § 327 ... shall be made only on application of the trustee ... stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest.... The application shall be accompanied by a verified statement of the person to be em-

ployed setting forth the person's connections with the debtor, creditors, or any other party in interest. . . .

Fed.R.Bankr.P. 2014(a).

Moreover, section 327(c) provides that a person is not disqualified "solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove of such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). Similarly, section 1107(b) provides that notwithstanding section 327(a), a person is not disqualified from employment by a debtor-in-possession solely because of such person's employment by or representation of the debtor before the commencement of the case. 11 U.S.C. § 1107(b).

Section 328(c) allows the Court to deny or reduce compensation to a professional *employed under section 327* or section 1103 if at any time during such professional person's employment under section 327 or 1103 such professional person is not a disinterested person, or represents, or holds an interest adverse to the interest of the estate. 11 U.S.C. § 328(c) (emphasis added). Construction of sections 327 and 328(c) requires an order authorizing employment under section 327 before the Court can exercise its discretion to award or deny compensation under section 328(c) for subsequently developed conflicts.

## B.  KMZ'S DISQUALIFYING CONFLICT

The pitfall of KMZ's prior simultaneous representation of both the Debtors and Stoecker is illustrative of the ethical trap into which attorneys and other professionals frequently fall. Representation of more than one person or entity in a matter which ends up in bankruptcy court is fraught with ethical quagmires for even the most experienced professional. The problems are exacerbated because temporary alliances forged between parties on a matter one day, frequently dissolve shortly thereafter when battle is joined on another matter arising in that same case. The complexities and shifting interrelationships

that can produce conflicts for the professionals and resulting dilemmas for the courts, appear to advance by geometric progression as bankruptcy filings proliferate. *See generally*, J. Ayer, *The Responsibilities of the Lawyer in Bankruptcy Practice, Norton Bankruptcy Law and Practice Monograph*, 1988–1 at 43 (1988).

The Court's order denying KMZ's employment application was not appealed. Therefore, it is not in issue for purposes of the fee application. A discussion of the reasons for denial of the employment, however, serves as useful background for analysis of KMZ's fee application. It was KMZ's conflict of representing adverse interests which resulted in the denial of its employment. The conflict arose by virtue of its simultaneous representation of both the Debtors on the one hand, and Stoecker, as the Debtors' sole equity shareholder on the other hand. The Court's findings and conclusions of a disqualifying conflict between the interests of the Debtors' estates and Stoecker's estate have been subsequently confirmed by the undisputed fact that the Trustee has filed substantial claims against the Stoecker estate and Raleigh has filed claims against the Debtors' estates.

Thus, KMZ's pre-petition simultaneous representation of Stoecker and the Debtors on the same legal matters giving rise to these cases, involved representation of interests materially adverse to the interest of the Debtors. The fact that Stoecker subsequently obtained separate counsel and that KMZ was not providing personal representation to him at the time the petitions were filed, does not obviate the conflict. Consequently, KMZ was not disinterested, and accordingly disqualified. *See e.g., In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa.1982). (attorney that represented a shareholder of the debtor was not disinterested and could not serve as trustee's counsel).

█ When a law firm is found not to be disinterested, disallowance of fees is appropriate. *Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 266, 61 S.Ct. 493, 496, 85 L.Ed. 820 (1941) ("where an actual

conflict of interest exists, no more need be shown in this type of case to support a denial of compensation"); *Wolf v. Weinstein*, 372 U.S. 633, 641, 83 S.Ct. 969, 975, 10 L.Ed.2d 33 (1963) ("a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest"); *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984); *In re Michigan General Corp.*, 77 B.R. 97 (Bankr.N.D.Tex.1987). Moreover, the Court may order the return of fees already paid. *In re B.E.T. Genetics, Inc.*, 35 B.R. 269 (Bankr.E.D.Cal.1983).

The statutory requirements are intended to prevent even the appearance of a conflict, irrespective of the integrity of the person or firm under consideration. *In re Martin*, 817 F.2d 175, 181 (1st Cir.1987). A law firm must exercise impartial and undivided loyalty on behalf of a client and is therefore prohibited from representing conflicting interests. *In re Paine*, 14 B.R. 272, 274 (W.D.Mich.1981). Once counsel is employed, "a lawyer owes his allegiance to the entity and not to the stockholder, director, officer, employee, representative or other person connected with the entity." *In re King Resources Co.*, 20 B.R. 191, 200 (D.Col.1982); *see also In re Hoffman*, 53 B.R. 564, 566 (Bankr.W.D.Ark.1985); *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 442 (Bankr.E.D.N.C.1984).

■ A Chapter 11 debtor-in-possession administers the assets of the estate and any business conducted therein, as a fiduciary for both the equity interests and creditors. *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1357 (9th Cir.1983); *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986); *In re Roblin Industries, Inc.*, 52 B.R. 241, 243 (Bankr.W.D.N.Y.1985). Thus, the Chapter 11 debtor-in-possession is saddled with almost all of the duties of a trustee. *See* 11 U.S.C. §§ 1106(a) and 1107(a). This principle of fiduciary duties and obligations carries over to the attorneys and the other professionals listed in Bankruptcy Rule 2014(a) who are retained for the debtor-in-possession.

■ Counsel for a Chapter 11 debtor owes a fiduciary duty to the corporation or partnership as an entity, and represents its interests, not those of its principals. *In re D.H. Overmyer Telecasting Co.*, 23 B.R. 823, 931 (Bankr.N.D.Ohio 1982), *aff'd*, 750 F.2d 31 (6th Cir.1984); *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 752 (Bankr.N.D.Tex.1988); *In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 243 (Bankr.N.D.Ohio 1986). The courts in those cases found a conflict of interest where the attorney represented interests of the debtors-in-possession as well as the interests of the shareholders of the debtors. *Accord In re Roberts*, 46 B.R. 815 (Bankr. D.Utah 1985), *aff'd in part and rev'd in part* (en banc) 75 B.R. 402 (D.Utah 1987); *In re Freedom Solar Center, Inc.*, 776 F.2d 14 (1st Cir.1985); *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D. Cal.1986); *In re Hoffman*, 53 B.R. 564 (Bankr.W.D.Ark.1985); *In re Watson Seafood & Poultry Co.*, 40 B.R. 436 (Bankr.E. D.N.C.1984); *In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842 (Bankr.W.D.Ky.1983); *In re Sambo's Restaurant, Inc.*, 20 B.R. 295 (Bankr.C.D.Cal.1982).

There is a split of authority over whether courts should draw distinctions between potential and actual conflicts of interest. Some cases hold that potential conflicts of interest do not warrant removal of the attorney for the debtor-in-possession in the absence of fraud or actual conflict. The opposing line of cases, which the Court will follow, considers the concept of potential conflicts as a contradiction in terms. *See In re Kendavis Industries International, Inc.*, 91 B.R. at 754. The Court joins Judge Abramson in *Kendavis* and the line of authorities which consider the concept of potential conflicts a contradiction in terms. As Judge Abramson aptly noted in *Kendavis:*

whenever counsel for a debtor corporation has any agreement, express or implied, with management or a director of a debtor, or with a shareholder, or with any controlling party, to protect the interest of that party, counsel holds a conflict. That conflict is not potential, it is

actual, and it arises the date that representation commences.

*Id.* at 754.

The First Circuit stated in *In re Martin*, 817 F.2d. 175, 181 (1st Cir.1987), the disinterested standard of section 327 is intended to prevent even the appearance of a conflict irrespective of the integrity of the person or the firm under consideration. The *Martin* court also noted that a disinterested person should be divested of any scintilla of personal interest in regard to decisions concerning estate matters. *Id.* at 181. Consequently, attorneys seeking appointment in bankruptcy cases owe a duty of complete disclosure of facts bearing upon their eligibility for appointment. *In re Futuronics Corp.*, 655 F.2d 463, 469 (2nd Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982). The court in *Martin* noted that the penalty for a conflict of interest ought to be in proportion to the gravity of the breach, rather than the entire fee. *Id.* at 182–183; *see also In re GHR Energy Corp.*, 60 B.R. 52, 68 (Bankr.S.D.Tex.1985). Other courts have suggested a type of balancing test which would compare attorney misconduct with the equities of the case. *In re Watson Seafood & Poultry Co.*, 40 B.R. at 440. Still other courts have made substantial reductions in compensation awards where conflicts were undisclosed, but orders of employment under section 327 were entered. *See e.g., In re Kendavis Industries International, Inc.*, 91 B.R. at 762.

The only truly safe harbor for those professionals subject to the stringent fiduciary standards of sections 327 and 1103, is to represent only a single client when that client is in, or likely headed for, bankruptcy court. Such fiduciary standards impact on fee applications because compensation is usually payable from the estate which is administered as a trust fund under the Bankruptcy Code. Hence, professionals who usually seek compensation from the estate must be held to fiduciary standards, in contrast to those who usually do not seek compensation from the estate, such as representatives of individual creditors or equity security holders.

## C. DENIAL OF FEES RESULTS FROM DISQUALIFICATION UNDER THE STATUTE

As a general rule, an attorney for a debtor-in-possession must have an order of employment before he will be awarded compensation. *In re McKinney Ranch Associates*, 62 B.R. 249, 251 (Bankr.C.D.Cal. 1986); *In re Willamette Timber Systems, Inc.*, 54 B.R. 485, 489 (Bankr.D.Or.1985); *In re Mahoney, Trocki & Associates, Inc.*, 54 B.R. 823, 825 (Bankr.S.D.Cal.1985); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 162 (Bankr.D.Ariz.1984). A debtor-in-possession's choice of counsel is subject to court approval. *In re Prime Foods of St. Croix, Inc.*, 80 B.R. 758, 760 (D.V.I.1987). Some courts have taken the position that work is virtually done on a pro bono basis until an order is obtained employing counsel. *In re Mahoney, Trocki & Associates, Inc.*, 54 B.R. 823 (Bankr.S.D.Cal.1985). Collier, in summarizing the law in this area states:

> When there is no compliance with the Code or rules, a professional may forfeit his right to compensation. The services ... must have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer ... even though valuable services were rendered in good faith.

2 *Collier on Bankruptcy*, ¶ 327.02 at 327–7 (15th ed. 1989).

Without court approval of employment, an application for compensation for professional services may be denied. *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984); *In re William A. Smith Construction Co.*, 92 B.R. 757 (Bankr.N.D. Ohio 1988); *In re Florida Brethren Homes, Inc.*, 92 B.R. 536 (Bankr.S.D.Fla. 1988). Noncompliance with section 327(a) and Bankruptcy Rule 2014(a) generally leads to forfeiture of compensation even to professionals who furnished valuable services to the estate. *In re Yeisley*, 64 B.R. 360 (Bankr.S.D.Tex.1986). (without court

authority person rendering services considered a volunteer). Accordingly, the Court holds that awards of compensation under section 330 must not only be based on services that are reasonable, necessary and beneficial to the estate but, they must also be authorized by prior order of court under section 327, in favor of a professional not holding a disqualifying conflict. To the extent that other courts have held to the contrary, the Court declines to follow those decisions. *See In re Cormier,* 35 B.R. 424 (D.Me.1983); *In re Eastern Inns of New Hampshire, Inc.,* 72 B.R. 418 (Bankr.D.Me.1987).

The Court lacks a statutory basis upon which to award KMZ fees. The strict requirements of section 327 would be effectively eviscerated by an award lacking foundation in the statute, which sets the basic requirements for allowance of compensation. The Court cannot disregard the plain language and meaning of the statutory requirements. To award fees on a quantum meruit or other basis, however, would undermine the Order denying KMZ's employment and render it a virtual nullity, as well as ignore or disregard the applicable statutory requirements. Absent an order authorizing KMZ's employment under section 327, there is no statutory basis upon which to compensate KMZ under section 330.

The Court's decision made here is not easy or gratifying. Rather, it is mandated by the existing provisions of the Bankruptcy Code. It is those provisions which the Court is bound to observe and follow, notwithstanding other lines of authority and approaches taken by other courts to ameliorate the harshness of the statute. The result here is consistent with the Court's rulings in other cases wherein a conflict has been undisclosed or concealed and the Court has denied all compensation under section 328(c). The Court's decision in also consistent with its Opinion rendered in *In re Peoples Savings Corp.,* 114 B.R. 151 (Bankr.N.D.Ill.1990) which denied compensation to a law firm who represented a debtor-in-possession and one of its principals who guaranteed a substantial amount of the underlying indebtedness. There, the law firm failed to receive an order authorizing employment because the Court found an actual conflict of interest existed. Some of the other case authorities cited therein by the parties to that case are applicable to the case at bar, but need not be repeated here.

The decision to deny compensation is rendered more difficult because KMZ made timely disclosure of the disqualifying conflict. KMZ did not conceal the facts and thus followed the requirements of Bankruptcy Rule 2014(a). KMZ is to be commended for its honesty in making the disclosure as well as its vigorous advocacy and attempts to meet the difficult burdens and demands made upon it at the outset of its representation. The Court's denial of the fee application is not only unpopular, but a most unpleasant duty. The Court declines to substitute its own views for the Congressional policy establishing high fiduciary standards for employment of professionals representing debtors-in-possession. The result reached in this case should not serve as any negative or adverse inference on KMZ's capabilities or ethics. Indeed, the Court lauds KMZ for making appropriate and timely disclosure under Rule 2014(a), rather than concealing or failing to disclose the facts, only to have them brought to light at a later date. The unpalatable result remains the same notwithstanding such candor.

The Court is mindful that honest, forthright lawyers, like KMZ, who make the disclosure at the outset of the case, can potentially fare worse in denial of their compensation than professionals who initially conceal or fail to disclose a conflict of interest which is later discovered or disclosed. Such an anomalous result could occur because of the directory rather than mandatory language of section 328(c) which allows a court to exercise its discretion in denial of compensation to a professional who has received an order authorizing employment. This legislative draftsmanship is therefore a potential for abuse if such judicial discretion is not appropriately and carefully exercised. The interplay between sections 327 and 328(c) must

be carefully monitored to prevent unjust results wherein the honest disclosing professional could be effectively penalized in one case but not the professional who fails to make timely disclosure of a similar conflict in another.

### D. CITED CASES DISTINGUISHED

KMZ and some of the objectors have cited several cases, including some decided by other judges of this Court, as support for their respective arguments. All of the cited cases are distinguishable from the case at bar.

*In re Banhalmi*, 84 B.R. 123 (Bankr.N. D.Ill.1988) decided by Judge DeWitt, involved an applicant who through oversight, or mistaken belief, had not obtained an order for employment. It was later sought on a *nunc pro tunc* basis. Fees were denied because the relevant *nunc pro tunc* standards were not met. *Banhalmi* is distinguishable from the case at bar because no *nunc pro tunc* order is involved, applicable or sought in this matter. Furthermore, *Banhalmi* involved an applicant who otherwise was not disqualified or found to have a conflict barring representation under section 327.

Similarly, *In re Met–L Wood Corp.*, 103 B.R. 972 (Bankr.N.D.Ill.1989) decided by Judge Coar, is distinguishable on other grounds. *Met–L Wood* did not involve a *nunc pro tunc* situation, but was a case where the debtor's counsel retained another law firm to defend him against charges of unethical conduct. He then sought to recover those expenses as an administrative expense. *Met–L Wood* did not involve a conflict held by debtor's counsel or the issue of a lack of an order authorizing employment. Nonetheless, portions of the *Met–L Wood* opinion furnish dicta applicable to the case at bar. Professional services rendered for a bankruptcy estate are normally compensable out of estate assets only if such services are authorized by the court prior to the services being rendered. This rule is necessary to maintain control of costs. Otherwise, the power of the court to insure that assets of the estate are not wasted would be undermined. *Id.* at 975.

KMZ also cites Judge Schmetterer's opinion *In re Central Ice Cream Co.*, 59 B.R. 476 (Bankr.N.D.Ill.1985). In that case, a conflict of interest arose during the course of services performed by special litigation counsel for the debtor-in-possession. The court reduced allowance of reasonable compensation, as permitted under section 328(c), as adjusted for the conflict, rather than denying compensation in full. In *Central Ice Cream*, however, special litigation counsel had previously received an order for employment under section 327(e) at a time when no conflict existed. The conflict did not develop until 1985, years after counsel's employment. Hence, *Central Ice Cream* is distinguishable from the case at bar.

KMZ also cites Judge Wedoff's decision *In re Al Gelato Continental Desserts, Inc.*, 99 B.R. 404, 406–409 (Bankr.N.D.Ill. 1989). In *Al Gelato*, counsel for the debtor had an actual conflict and failed to disclose relationships with various entities. Counsel was subsequently disqualified, but was allowed reasonable compensation, less a ten percent sanction. Contrary to the facts of the instant case, the attorneys in *Al Gelato* received an order authorizing employment under section 327(a). Initially, no objections to the employment of the attorneys were made because the attorneys had not made full disclosure under Rule 2014(a). It was not until over a month later that the simultaneous representation and conflict were raised. Judge Wedoff removed the attorney and exercised his discretionary authority under section 328(c), imposing a fee reduction penalty of ten percent because there had been no attempt to hide or conceal the facts. The court declined to impose the harsher penalty of denial of all fees.

KMZ also cites Chief Judge Schwartz's opinion *In re Jartran, Inc.*, 87 B.R. 525 (N.D.Ill.1987). *In Jartran*, the court allowed a law firm to continue to represent both the debtor-in-possession as well as its sole shareholder, who was also the largest secured creditor, and possibly the largest

unsecured creditor of the debtor-in-possession. The same law firm was permitted to continue to represent both the debtor and the sole shareholder because none of the potential conflicts were proven to be actual conflicts. Judge Schwartz *sua sponte* appointed an examiner to inquire into the matter of whether the potential conflict would ripen into a actual conflict, whether the "Chinese Wall" erected by the attorneys would erode, and to inform the court of the status of negotiations towards developing a consensual plan of reorganization. *Jartran* is distinguishable from the instant case because no "Chinese Wall" was in existence to screen out the conflict, nor was the appointment of an examiner made to screen conflicts. Rather, an interim Trustee with limited powers was appointed to preserve the Debtors' estates. The actual conflict was found to exist by the Court in this case after timely and immediate objections were made upon the filing of KMZ's application in accordance with the provisions of section 327(c).

KMZ cites *In re Chicago & West Towns Railways, Inc.*, 230 F.2d 364 (7th Cir.1956), *cert. denied*, 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469 (1956) and *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973), claiming that there have been prior Seventh Circuit decisions allowing reasonable compensation to counsel who have not been retained or whose representations have involved a conflict of interest. Both of these cases, however, were decided before the adoption of the 1978 Bankruptcy Code and did not involve the strict statutory requirements of section 327. The requirements of section 327 supersede prior rulings under the former Bankruptcy Act. Moreover, *Stolkin* did not involve a conflict. Rather, the attorney inadvertently failed to comply with a local bankruptcy court General Order and rule, not the Bankruptcy Act itself. Bankruptcy Rule 9029 authorizes prescription of local rules not inconsistent with the Federal Rules of Bankruptcy Procedure. In the event of a conflict between the Bankruptcy Rules and the Code, the Code controls. *See e.g., In re Morrissey*, 717 F.2d 100 (3rd Cir.1983).

## E. SERVICES RENDERED PRE–PETITION AND DURING THE GAP PERIOD

■ Section 329(b) concerns a debtor's transactions with its attorneys for the year before the date of the filing of the petition. If the compensation paid exceeds the reasonable value of any such services, the Court may cancel any such agreement and order the return of any such payment to the extent found excessive. 11 U.S.C. § 329(b). In its supplement to the fee application, KMZ attached time sheet summaries for pre-petition services performed from the date of retention through the date of the filing of the involuntary petitions, and for the gap period. No objection to the reasonable value of such services has been made. Evidence was taken at the hearing on the fee application. Lead counsel for KMZ testified that the various services rendered were necessitated because of the substantial demands from the various Banks and other lenders for meetings, information and documents. The documentation, financial records, and complex business dealings of the Debtors and over twenty non-Debtor subsidiary corporations was apparently enormous. Additional time had to be expended because of the questions raised as to the integrity of the information and documents involved.

KMZ attempted to provide workout services to begin an orderly out-of-court liquidation plan. KMZ was called upon to respond to trade creditors and other vendor queries while simultaneously meeting with and responding to discovery requests made by the Banks. KMZ was compelled to devote a substantial amount of time and effort to understand and establish the true nature of the current financial situation of the Debtors and their subsidiaries, and simultaneously review all of the relevant financial transactions and property transfers within the years immediately prior to KMZ's retention. The Debtors only had a handful of remaining personnel to assist, thus compounding the problems confronting KMZ. In addition, allegations of forgery were raised concerning certain key documents necessitating retention and consultation of forensic experts. It is therefore no surprise to the Court or anyone

else, that the services expended pre-petition and during the gap period were substantial.

The Court has reviewed the time sheet summaries for the pre-petition and gap periods. Although the format of those summaries has not been presented in accordance with the guidelines of *In re Continental Illinois Securities Litigation,* 572 F.Supp. 931 (N.D.Ill.1983), the Court declines to set any further hearing regarding same or order the return of any of those fees paid. The Court can find nothing to indicate that the services rendered for those periods were unreasonable or excessive.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby denies in full the requested compensation and reimbursement of expenses. The sum of $84,987.40, which Katten, Muchin & Zavis presently holds, plus all interest accrued and accruing thereon, is hereby ordered to be disgorged and turned over to the Trustee within ten days of the entry of this Order.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.